UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT L. WILSON, | ) | Case No. 3:04 CV 7224 |
| | ) | |
| Petitioner, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE |
| | ) | |
| JAMES HAVILAND, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

The petitioner, Robert L. Wilson, is a prisoner in the custody of the state of Ohio serving a thirteen-year sentence for the crimes of aggravated burglary and tampering with evidence. In November, 1999, Wilson was charged with one count of aggravated burglary (Ohio Rev. Code § 2911.11(A)(1)), one count of rape (§ 2907.02(A)(1)(b)), one count of gross sexual imposition § 2907.05(A)(4)), and one count of tampering with evidence (§ 2921.12(A)(1)). In November, 2000, a jury acquitted Wilson of rape but was unable to reach verdicts as to the other counts. Subsequently, the court granted the state's motion to amend the indictment to replace the acquitted rape charge with an additional count of gross sexual imposition. At Wilson's second trial, a jury found him guilty on the count of aggravated burglary and tampering with evidence, but not guilty on either of the counts of gross sexual imposition. In March, 2001, the state trial court sentenced Wilson to consecutive sentences of ten years' imprisonment for aggravated assault and also three years' imprisonment for tampering with evidence.

Wilson unsuccessfully appealed on the grounds, included in this petition: that his counsel was ineffective; and that the jury returned an inconsistent verdict. *State v. Wilson*, 2002 WL

31420758, 2002 Ohio-5920 (Ohio Ct. App. Dist. 6), *motion denied*, 98 Ohio St.3d 1473, 784 N.E.2d 707 (2003), *appeal allowed*, 98 Ohio St.3d 1474, 784 N.E.2d 708 (2003), *judgment affirmed*, 99 Ohio St.3d 1447, 99 N.E.2d 236 (2003).[1] Wilson also filed a petition for post-conviction relief in the state trial court, again alleging ineffective assistance of counsel. The state trial court denied this petition on July, 11, 2003, (Resp. Exhibit U), and Wilson did not appeal. Wilson then petitioned this court to grant a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, claiming he was denied effective assistance of counsel, and that the jury verdicts acquitting him of gross sexual imposition while convicting him of aggravated burglary were inconsistent.

*Ground One: Ineffective Assistance of Counsel*

Wilson's contends that he was denied his Sixth Amendment right to effective assistance of counsel because counsel did not seek a separate trial on the charge of tampering with evidence and because his counsel failed to call a prosecution witness who provided inconsistent testimony during the first trial. In effect, these are separate grounds.

*Ineffective assistance of counsel – failure to seek separate trials:*

Wilson's claim that counsel was ineffective for not seeking separate trials was not raised on state appeal or as part of his petition to the state trial court for post-conviction relief. Failure to raise grounds on state appeal results in a procedural default which serves as an adequate and independent state ground to bar federal review. *See Lordi*, 384 F.3d at 194; *Rust v. Zent*, 17 F.3d 155, 160 (6th

[1] Hereinafter referred to as "Resp. Exhibit N."

Cir. 1994). Indeed, "[f]ederal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003). Wilson cites *Hudson v. Jones*, 351 F.3d 212 (6th Cir. 2004), as authority supporting federal review on the merits of procedurally barred claims. (Pet. Reply at 4). *Hudson*, however, provides for review on the merits of a procedurally-defaulted claim only in the interest of judicial economy where disposition of the claim on procedural grounds would involve "complicated issues of state law." *Id.* at 216. Wilson's procedural default is not complicated. Federal review of this aspect of Wilson's claim of ineffective assistance of counsel is procedurally barred.

*Ineffective assistance of counsel – Failure to investigate and call to the stand a key witness:*

The remainder of Wilson's claim of ineffective assistance of counsel focuses on the testimony of Detective Sherri Wise. During Wilson's first trial, Detective Wise admitted that her police report contained inaccuracies. (Wilson's first trial Tr. at 337, 338, 343). Defense counsel, however, chose not to call Det. Wise as a defense witness. Moreover, Wilson claims that defense counsel was not able to elicit this admission during the second trial because Det. Wise was called by the prosecutor as a rebuttal witness, and defense counsel was not permitted to cross-examine her on this material. Wilson contends his counsel should have called Det. Wise as a defense witness in order to ensure the inclusion of her testimony about the inaccuracies in her report.

In the present case, the state appellate court "thoroughly reviewed" the trial court record and pointed out that defense counsel expressed on the record that it was his "wholehearted tactical

opinion" that calling Det. Wise and other witnesses urged by his client would not have been beneficial and could have even proved detrimental to Wilson's case. (Resp. Exhibit N, ¶61). Defense counsel decided not to call Det. Wise after a complete investigation. Once appointed to handle Wilson's second trial, defense counsel successfully moved for production of the transcript from the first trial and made use of the transcript during the second trial to impeach the testimony of the State's witnesses. (Resp. Exhibit L at 6). Indeed, defense counsel elicited information regarding the inaccuracies of Det. Wise's report during his cross-examination of other State witnesses. Defense counsel's cross examination of Rhonda Thomas brought out that she never told Det. Wise that she went to her mother's room to pray after witnessing Wilson's attack. (Second Trial Tr. at 366). Similarly, defense counsel elicited testimony from Kristina Thomas that she never told Det. Wise that Wilson returned to her room after chasing her sister. (Second Trial Tr. at 305-306) Defense counsel's use of the record of the first trial indicates complete investigation of the record in formulating his trial strategy. As the state appellate court's decision indicates, defense counsel was aware of the potential effects of not calling Det. Wise, and he made an informed decision not to call Det. Wise as a defense witness. Such an informed decision was part of a reasonable trial strategy, which denied Det. Wise an opportunity to mitigate or explain inaccuracies in police reports she had prepared.

The Sixth Amendment guarantees persons accused of a crime the "right to effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, n.14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). In *Strickland*, the Supreme Court held that in order to establish ineffective counsel a

defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment . . . [and] that the deficient performance prejudiced the defense." *Broom v. Mitchell*, 441 F.3d 392, 408 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 687). Elaborating further, the Supreme Court explained, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing norms," *Strickland*, 466 U.S. at 688, and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

Applying *Strickland's* two-part test, the state appellate court found Wilson's claim to be without merit. First, regarding the reasonableness of defense counsel's performance, the court emphasized counsel's discretion in formulating trial strategy: "Trial counsel's decisions as to which witnesses to call at trial fall within the realm of trial strategy and generally do not give rise to a claim of ineffective counsel." (Resp. Exhibit N, ¶60). This emphasis was consistent with the Supreme Court's position in *Strickland* that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521-522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

In determining whether ineffective assistance of counsel caused prejudice, courts must focus on whether "there is a reasonable probability that but for counsel's unprofessional errors, the result . . . would have been different." *Williams v. Taylor*, 529 U.S. 362, 394, 120 S.Ct. 1495, 146 L.Ed.2d

389 (2000) (quoting *Strickland*, 466 U.S. at 694). "Indeed, it is insufficient to show only that the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test." *Williams*, 529 U.S. at 394. The state appellate court reviewed the record of both trials, (Resp. Exhibit N at 61), and it found that Wilson "failed to show a reasonable probability that, but for counsel's decision not to call the detective, the result of the proceeding would have been different when considering the totality of the evidence that was before the court." (Resp. Exhibit N, ¶61). In reaching this conclusion, it is apparent that the state appellate court recognized that while Det. Wise's testimony at the first trial indicated she filed an inaccurate, perhaps even misleading police report, her testimony would not have been sufficiently beneficial to Wilson to support a finding of prejudice, and calling Det. Wise could be construed as implicitly vouching for any exculpatory reasons given by Det. Wise for sloppy police work.

Federal habeas review in this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under the AEDPA, this Court may grant habeas relief "if the relevant state-court decision was either (1) '*contrary* to . . . clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) '*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States.'" *Williams v. Taylor*, 529 U.S. 362, 404-405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The phrases 'contrary to" and "unreasonable application" are not the same. *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Under the "contrary to"

standard of review, a state court's decision is "contrary to" clearly established federal law when it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [this] precedent." *Williams*, 529 U.S. at 362. Under the "unreasonable application" standard, "the state court identifies the correct governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413; *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Moreover, in order to be unreasonable, the application of precedent must be "objectively unreasonable." *Williams*, 529 U.S. at 409.

In evaluating Wilson's claim of ineffective counsel, the state appellate court examined defense counsel's decision not to call Detective Wise and whether or not this decision had a prejudicial effect. In determining that defense counsel's decision was part of a reasonable strategy and that no prejudice occurred, the state appellate court engaged in a reasonable application of *Strickland* and its progeny. Wilson's claim of ineffective assistance of counsel is, therefore, without merit.

*Ground Two: Inconsistent Jury Verdicts:*

Wilson contends his acquittal on the charges of gross sexual imposition should have precluded his conviction on the charge of aggravated burglary. It is well-established, however, that "consistency in the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Dunn v. U.S.*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed.2d 356 (1932) (Holmes, J.) (citing *Latham v. The Queen*, 5 Best & Smith, 635, 642, 643; *Selvester v. United States*,

170 U. S. 262, 18 S. Ct. 580, 42 L. Ed. 1029 (1898). The governing principle from *United States v. Powell*, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), is that "inconsistent verdicts--even verdicts that acquit on a predicate offense while convicting on the compound offense--should not necessarily be interpreted as a windfall to the Government at the defendant's expense." *Id.*

While the state appellate court did not cite this precedent in discussing the merits of Wilson's claim, such a reference was not necessary. In *Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 157 L.Ed.2d 263 (2004), the Supreme Court held that "a state court need not even be aware of our precedents so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id.* at 16 (emphasis omitted) (quoting *Early v. Packer*, 537 U.S. 3, 123 S.Ct.2d 362, 146 L.Ed.2d 389 (2000)). In the present case, the state appellate court stated that "Ohio courts have held that consistency between verdicts on multiple counts of an indictment is unnecessary . . . 'and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.'" (Resp. Exhibit N at ¶38 (quoting *State v. Adams*, 53 Ohio St.2d 223, 374, 364 N.E.2d 137 (1978)).

The state appellate court also found that the elements required to prove aggravated burglary do not necessarily require conviction for an underlying crime. Addressing a similar claim where the charge allegedly underlying the charge of aggravated burglary was theft, the Twelfth District Ohio Court of Appeals, in *State v. Jordan*, 1995 WL 103229 at *5 (Ohio App. Dist. 12, 1995),[2] found that

---

[2] "Unpublished Ohio appellate decisions may be cited where they are 'reasonably widely' distributed, involve questions 'distinctly stated and decided,' and remain 'unchanged by a decision of the (Ohio) Supreme Court.'" *Keener v. Ridenour*, 594 F.2d 581, 586 (6th Cir. 1979) (quoting *State v. George*, 50 Ohio

"the language of R.C. 2911.11(A) indicates, **only** a ***purpose*** to commit a theft offense is **necessary**." *See also Ohio Jury Instructions*, 4 OJI 511.11 (2004) (recommending that where there is a charge of aggravated burglary, jury instructions may explain that aggravated burglary requires "only a purpose to commit a criminal offense . . . and not the actual commission"). Recognizing this principle and noting that the verdicts were not actually inconsistent, the state appellate court decided "there was no inconsistency of verdicts in this case." (Exhibit N at ¶38).

As discussed, this Court is limited to examination of whether the state courts engaged in a reasonable application of clearly established federal law. The state appellate court's reasoning, acknowledging consistent verdicts are not necessary and explaining that the verdicts in this case were not inconsistent, is neither contrary to nor an unreasonable application of clearly established law. Consequently, Wilson's argument that the verdicts were inconsistent is without merit.

## *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, Wilson has not demonstrated that he is in custody pursuant to judgment of a State court which was the result of a decision that was contrary to or involved the unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable determination of the facts in light of the evidence in the State court proceeding. See 28 U.S.C. §2254(d)(1) and

---

App.2d 297, 306-313, 362 N.E.2d 1223 (Ohio Ct. App. Dist. 10, 1975)).

(2). There has been no demonstrated need for an evidentiary hearing. It is recommended that the petitioner's application for habeas corpus be denied.

s/James S. Gallas

James S. Gallas
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: June 27, 2006