UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------------
                                              :
ROBERT L. WILSON                              :    CASE NO. 3:04-CV-7224
                                              :
                                              :    JUDGE JAMES S. GWIN
              Petitioner,                     :
                                              :    ORDER & OPINION
                                              :
vs.                                           :    [Resolving Docs. 1, 9, 20, 26 & 27]
                                              :
JAMES HAVILAND,                               :
                                              :
              Respondent.                     :
                                              :
------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On April 26, 2004, Petitioner Robert L. Wilson filed a Petition for Writ of Habeas Corpus, under 28 U.S.C. § 2254. [Doc. 1.] On June 11, 2004, Respondent James Haviland filed a Return of Writ. [Doc. 9.] On Dec. 17, 2004, the case was transferred to Judge James S. Gwin and the Court referred the case to Magistrate Judge James S. Gallas for a Report and Recommendation pursuant to Local Rule 72.1. [Doc. 23.] On June 6, 2006, Magistrate Judge Gallas filed a Report and Recommendation that the Court deny Petitioner's petition for habeas corpus. [Doc. 26.] Petitioner timely objects to the magistrate judge's report. [Doc. 27.] For the reasons delineated below, the Court **ADOPTS** the magistrate judge's Report and Recommendation and **DENIES** Petitioner's Petition for Writ of Habeas Corpus.

**I. Background**

Case No. 3:04-CV-7224
Gwin, J.

In September 1999, Wilson was indicted on one count of aggravated burglary (O.R.C. § 2911.11(A)(1)), one count of rape (O.R.C. § 2907.02(A)(1)(b)), one count of gross sexual imposition (O.R.C. § 2907.05(A)(4)), and one count of tampering with evidence (O.R.C. § 29211.12(A)(1)). At the initial trial, the jury acquitted Wilson as to the charge of rape, but was unable to reach a verdict on the remaining counts. Consequently, prior to the second trial, the State successfully moved the court to amend the indictment and substituted a supplemental count of gross sexual imposition for the acquitted rape charge. During the course of a second trial, the jury found Wilson guilty of aggravated burglary and tampering with evidence, but not guilty as to both counts of gross sexual imposition. On March 2, 2001, the state trial court sentenced Wilson to consecutive prison sentences of ten years for aggravated burglary and three years for tampering with evidence.

In the original trial, the prosecution called Toledo Police Detective Sherri Wise as a witness in its case-in-chief. Upon cross-examination, Wise conceded that her police report contained errors. However, at the second trial, the prosecution did not include Wise in their case-in-chief. Furthermore, defense counsel chose not to call Wise as a defense witness. Instead, the prosecution called Wise as a rebuttal witness. When defense counsel attempted to question Wise on the discrepancies in her police report, the court sustained the prosecution's objection that such questions were outside the scope of Wise's rebuttal testimony.

Following his conviction at trial, Petitioner unsuccessfully appealed, raising seven assignments of error including two that are included in Petitioner Wilson's habeas petition: (1) ineffective assistance of counsel; and (2) jury returned inconsistent verdicts. *State v. Wilson,* 2002 WL 31420758 (Ohio Ct. App. Oct. 25, 2002), *motion denied,* 782 N.E.2d 76 (Ohio), *appeal allowed*, 784 N.E.2d 708 (Ohio), *aff'd,* 789 N.E.2d 236 (Ohio 2003). Wilson subsequently filed a

-2-

Case No. 3:04-CV-7224
Gwin, J.

post-conviction petition again alleging ineffective assistance of counsel for failure to investigate and call a key witness to testify. On July 11, 2003, the state trial court barred Wilson's claim under the doctrine of *res judicata*. Wilson did not appeal the court's decision.

On April 26, 2004, the Petitioner filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. [Doc.1.] With his habeas petition, the Petitioner raises three separate grounds for relief: (1) ineffective assistance of counsel arguably arising from Wilson's counsel's failure to seek a separate trial on the count of tampering with evidence; (2) ineffective assistance of counsel due to inadequate investigation and failure to call a key witness during the second trial; and (3) denial of due process as the result of inconsistent verdicts.

On June 11, 2004, the Respondent filed a Return of Writ (Doc. 9), which was followed by Petitioner's Traverse to Return of Writ. [Doc. 20.] On June 6, 2006, Magistrate Judge Gallas issued his Report and Recommendation that the Petition for Writ of Habeas Corpus be denied. [Doc. 26.] On July 6, 2006, Petitioner timely objected to the Report and Recommendation. [Doc. 27.]

## II. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs Petitioner's habeas petition. The pertinent portion of the AEDPA states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Case No. 3:04-CV-7224
Gwin, J.

28 U.S.C. § 2254(d). Accordingly, this Court may grant habeas relief in two distinct situations: where the "relevant state-court decision was . . . *contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States or *involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000) (emphasis in original).

As the language of the statute indicates, this Court's inquiry extends only as far as decisions of the Supreme Court. *Id.* at 412; *see also Hill v. Hofbauer,* 337 F.3d 706, 716 (6th Cir. 2003) (stating that United States Court of Appeals decisions are informative only insofar as they "determine whether a legal principle or right has been clearly established by the Supreme Court"). These clearly established standards of federal law arise from the holdings, rather than dicta, of Supreme Court cases. *Williams,* 529 U.S. at 412; *Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005). Nonetheless, the Court need not rely exclusively on bright-line rules explicitly proffered by the Supreme Court. Rather, the "relevant precedents include . . . the legal principles and standards flowing from [Supreme Court] precedent." *Taylor v. Withrow,* 288 F.3d 846, 852 (6th Cir. 2002).

"Contrary to" and "unreasonable application" are not identical provisions. *Lockyer v. Andrade,* 538 U.S. 63, 75-76 (2003). A state court's decision is contrary to clearly established federal law where the court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or where "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite of [the Supreme Court]." *Williams,* 529 U.S. at 405. As to the "unreasonable application" standard, the habeas court may grant the writ where "the state court identifies the correct governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at

-4-

Case No. 3:04-CV-7224
Gwin, J.

413. Under this standard, an incorrect or erroneous state court decision is not "unreasonable." *Id.* at 409; *accord Lockyer,* 538 U.S. at 75. Rather, the application of clearly established precedent by the state court must be "objectively unreasonable." *Williams,* 529 U.S. at 409. Therefore, a court's "independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly" does not provide sufficient grounds for granting a habeas petition. *Id.* at 411.

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the Report and Recommendation to which the parties have made an objection. 28 U.S.C. § 636(b)(1). Parties must file any objections to a Report and Recommendation within ten days of service. Failure to object within that time waives a party's right to appeal the magistrate judge's recommendation. FED. R. CIV. P. 72(a); *see Thomas v. Arn*, 474 U.S. 140, 145 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Absent objection, a district court may adopt the magistrate judge's report without review. *Thomas*, 474 U.S. at 149. Moreover, the factual findings of a state court are presumed to be correct. A federal court may only diverge from a state court's factual findings if the petitioner shows by clear and convincing evidence that the findings are erroneous. *See* 28 U.S.C. § 2254(e)(1).

To establish ineffective assistance of counsel, Petitioner must show that his counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Bigelow v. Williams,* 367 F.3d 562, 570 (6th Cir. 2004); *Mallett v. United States,* 334 F.3d 491, 497 (6th Cir. 2003), *cert. denied,* 540 U.S. 1133 (2004); *Bugh v. Mitchell,* 329 F.3d 496, 513-14 (6th Cir.), *cert. denied,* 540 U.S. 930 (2003). A reviewing court's scrutiny of counsel's performance is

Case No. 3:04-CV-7224
Gwin, J.

highly deferential. *Strickland,* 466 U.S. at 689. Indeed, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690; *accord Bigelow,* 367 F.3d at 570; *Mallett,* 334 F.3d at 497.

Nonetheless, the court must make an independent judicial evaluation of counsel's performance and determine whether counsel acted reasonably under all the circumstances. *Roe v. Flores-Ortega,* 528 U.S. 470, 481 (2000) ("the relevant question is not whether counsel's choices were strategic, but whether they were reasonable"). The court's position in *Strickland* emphasizes that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigations." 466 U.S. at 690.

In assessing the second prong of the *Strickland* test, whether the deficient performance prejudiced the defense, a court must determine whether "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. This requires a finding beyond a mere showing that "the errors had some conceivable effect on the outcome of the proceeding, because virtually every act or omission of counsel would meet that test." *Williams,* 529 U.S. at 394 (citing *Strickland,* 466 U.S. at 693).

With regard to Petitioner's claim of inconsistent verdicts, the governing rule of law is that "consistency of a verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Dunn v. United States,* 284 U.S. 390, 393 (1932); *accord Harris v. Rivera,* 454 U.S. 339, 346 (1981). Even where a defendant is acquitted on a predicate offense and convicted

Case No. 3:04-CV-7224
Gwin, J.

on the compound offense, "inconsistent verdicts . . . should not necessarily be interpreted as a windfall for the Government at the defendant's expense." *United States v. Powell,* 469 U.S. 57, 65 (1984). As the *Powell* court correctly notes, "it is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." 469 U.S. at 65.

### III. Analysis

*Ground One: Ineffective Assistance of Counsel - Failure to Seek Separate Trials*

Wilson claims that he was denied his Sixth Amendment right to effective assistance of counsel when his counsel failed to seek a separate trial for the charge of tampering with evidence. Wilson concedes that he failed to raise such a claim on direct appeal in state court or in his petition seeking post-conviction relief. [Doc. 20.] When a federal habeas petitioner fails to fairly present a constitutional claim to the state courts, he procedurally defaults his claim on federal habeas corpus. A federal habeas court is generally precluded from hearing issues that could have been raised in state court, but were not, and, consequently, can no longer be brought before a state court due to procedural default or waiver. *Wainright v. Sykes,* 433 U.S. 72, 90-91 (1977); *Gray v. Netherland,* 518 U.S. 152, 162 (1996); *see also Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994). Indeed:

> [if] a habeas petitioner fails to obtain consideration of a claim by a state court . . . due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.

Case No. 3:04-CV-7224
Gwin, J.

*Seymour v. Walker,* 224 F.3d 542, 549-50 (6th Cir. 2000); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Wilson's claim of ineffective assistance of counsel, first raised in his habeas petition, would be procedurally barred from submission to Ohio courts pursuant to the doctrine of *res judicata*. *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). The doctrine of *res judicata* applies to constitutional claims that could have been raised on direct appeal, but were not. *Id.* For federal habeas purposes, "a petitioner is considered to have waived the claims . . . 'unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.'" *Norris,* 146 F.3d at 322 (quoting *Rust,* 17 F.3d at 160).

To show "cause" sufficient to excuse a procedural default, a petitioner must show that an objective factor external to the defense impeded counsel's efforts to comply with the State procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Moreover, habeas claims relying upon ineffective assistance of counsel grounds, must be presented to the state courts as an independent constitutional violation: "[A] claim of ineffective assistance" generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 489 ("[W]e think that the exhaustion doctrine, which is 'principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings,' generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.") (citation omitted).

Wilson was aware of the facts underlying his claim for ineffective assistance of counsel in failing to seek separate trials from the moment of his conviction. Wilson makes no averment to the

-8-

Case No. 3:04-CV-7224
Gwin, J.

contrary and shows no cause for his failure to raise the claim. Also, Wilson never presented this ineffective assistance of counsel claim to the Ohio state courts. Given that the first prong of the *Norris* exception has not been satisfied, it is unnecessary to confront whether or not Wilson would have suffered actual prejudice as a result of his counsel's failure to seek separate trials. Therefore, Wilson's failure to raise his claim to the Ohio Supreme Court upon direct appeal or in seeking post-conviction relief bars review of the claim by this Court. *Rust,* 17 F.3d at 160.

Petitioner may also have grounds for review of an unexhausted claim where, in the interest of judicial efficiency, adjudication of the claim would necessarily involve "complex issues of state law." *Hudson v. Jones,* 351 F.3d 212, 216 (6th Cir. 2004). Wilson argues that his instant claim for ineffective counsel should not be barred pursuant to *Hudson*. However, Wilson makes no suggestion that his procedural default is a complex issue of state law. In fact, the procedural default at issue in the present case is a simple matter. Wilson failed to pursue a claim for post-conviction relief in the allotted 180-day period. As such, Wilson's claim is barred by the common law doctrine of *res judicata*.

Wilson further contends that his procedural default can be excused to prevent a "manifest injustice." *See Colman v. Thompson,* 501 U.S. 722, 749-50 (1991). However, Wilson makes no assertion and provides no evidence as to how procedural default of the claim would create manifest injustice. Additionally, the threshold for "manifest injustice" is incredibly high. In *Murray*, the Supreme Court concluded that while certain circumstances may warrant the excusal of procedural default, only "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent" may a court grant a petition where the claim otherwise is barred. 477 U.S. at 496.

Case No. 3:04-CV-7224
Gwin, J.

Wilson shows insufficient evidence to excuse his procedural default. His failure to make a showing of his actual innocence precludes his ability to surpass the significant threshold of "manifest injustice," particularly given the other probative evidence raised against him by the government. *Schlup v. Delo,* 513 U.S. 298, 327 (1995) (holding that in order "[t]o satisfy the *Carrier* gateway standard, a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt"). Consequently, this Court is procedurally barred from reviewing Wilson's claim of ineffective assistance of counsel for failure to seek separate trials.

*Ground Two: Ineffective Assistance of Counsel - Failure to Investigate and Call a Key Witness*

Wilson also contends that his Sixth Amendment right to effective counsel was violated when defense counsel failed to interview and call a key witness, Detective Wise, during the second trial. [Doc. 1.] Initially, it is important to note that although Petitioner retains control over whether he testifies on his own behalf at trial, he has no right to overrule defense counsel in selecting which witnesses are called at trial on his behalf. Defense counsel retain the exclusive authority over which witnesses to call. *Samatar v. Clarridge,* 2007 U.S. App. LEXIS 12136 (6th Cir. 2007) ("The decision to call a witness is trial strategy . . . Further, even if the wisdom of such an approach is debatable, debatable trial tactics do not constitute ineffective assistance of counsel."); *Linsk v. Linsk,* 449 P.2d 760, 763 (Cal. 1969) ('it has been held that an attorney may refuse to call a witness even though his client desires that the witness testify") (citation omitted)*; see also* ABA STANDARDS RELATING TO THE ADMINISTRATION OF CRIMINAL JUSTICE, THE DEFENSE FUNCTION 4-5.2 (1991) (asserting that "decisions on what witnesses to call . . . are the exclusive province of the lawyer after

Case No. 3:04-CV-7224
Gwin, J.

consultation with the client").

When applying the first prong of the *Strickland* test, courts must determine whether defense counsel's performance was so deficient as to render it unreasonable. 466 U.S. at 687; *see also Roe,* 528 U.S. at 481. On direct appeal, the state court concluded that defense counsel's decision not to call Wise in the second trial was not deficient, but rather an informed component of trial strategy. *Wilson,* 2002 WL 31420758 at *61.

In reviewing defense counsel's actions, it is apparent that calling Wise as a direct witness would have provided little to no benefit to Petitioner's case. Defense counsel used acknowledged inaccuracies in Wise's police report to impeach witnesses in the second trial. [Doc. 15.] In all likelihood, Wise's testimony would have negatively impacted defense counsel's ability to utilize the inconsistencies in Wise's report to impeach other witnesses because she would have been given an opportunity to explain any inaccuracies in her report and rehabilitate the government's case. Wilson would have lost any element of surprise attained at the first trial as Wise would be now able to anticipate defense counsel's questioning and better articulate her responses. Thus, using the information gleaned from Wise's testimony at the first trial solely to impeach witnesses at the second trial actually maximized Wise's overall benefit to the defense.

If Wise's rebuttal testimony extended to the police report, there is no doubt that defense counsel would have pressed her on the incongruencies in the report. However, as a trial strategy, it makes little sense to call a witness for the sole purpose of destroying her credibility, as opposed to preventing the jury from receiving her testimony on this issue at all. At best, Wise's testimony in the second trial would have further impugned the police report and her own credibility rather than exculpated Wilson. Therefore, even if he had been permitted to cross-examine Wise, defense

-11-

Case No. 3:04-CV-7224
Gwin, J.

counsel's choice not to call Wise as a defense witness was reasonable.

Finally, with regard to Wilson's bare assertion that his defense counsel failed to perform adequate pre-trial investigation, the effective use of Wise's testimony from the first trial as impeachment material demonstrates counsel made a thorough review of the record. Consequently, under the *Strickland* standard, the strategic decision not to call Wise is essentially unassailable because "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690.

Because the first prong of the *Strickland* test has not been met, it is unnecessary to proceed with an examination of the second. However, even if the first prong had been satisfied, there is no evidence of prejudice such that "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694. Petitioner fails to show that calling Wise as a defense witness in the second trial would have produced an identical outcome.

In his objections, Petitioner implies a direct correlation between the hung jury in the first trial and Wise's testimony therein. [Doc. 27.] Wilson subsequently proffers that the State's decision not to call Wise as part of its case-in-chief is evidence of the influential nature of her testimony and, thereby, the prejudicial quality of defense counsel's ineffective performance. *Id.* Both of these averments are without merit. Initially, the suggestion that the absence of Wise's testimony was determinative of Petitioner's conviction represents the exact sort of speculation the *Strickland* court warned against. 466 U.S. at 693 (requiring a finding beyond a mere showing that "the errors had some conceivable effect on the outcome of the proceeding [because] virtually every act or omission of counsel would meet that test"). The State's strategic choice not to call Wise in the second trial

-12-

Case No. 3:04-CV-7224
Gwin, J.

is merely evidence of her negligible value to the State's case. Rather than have its witness decimated on cross-examination, the State shifted the burden to call the witness to the defense, if the defense felt her testimony would be valuable. Yet, it makes little sense for defense counsel to call Wise as a witness purely to attack her testimony, rather than simply allowing her testimony to remain unheard by the jury.

Magistrate Judge Gallas correctly points out that the state appellate court's decision is congruous with a reasonable application of *Strickland*. [Doc. 26.] Petitioner has neither proven that defense counsel's assistance was sufficiently ineffective to be deemed unreasonable nor provided a basis for an assertion that counsel's failure to call Wise as a witness was prejudicial. Additionally, there is no suggestion that the state court decision was contrary to clearly established federal law. Consequently, Petitioner has failed to present a claim for relief that is cognizable in federal habeas corpus.

*Ground Three: Inconsistent Jury Verdicts*

Petitioner contends that the jury's acquittal as to the charges of gross sexual imposition obviates conviction on the charge of aggravated burglary. [Doc. 1.] Wilson suggests that the aggravated burglary charge was contingent on him inflicting physical harm to the victim in the form of gross sexual imposition. *Id.* As to this claim, the Ohio appellate court properly concluded on direct appeal that such an assertion is "illogical and erroneous." *Wilson,* 2002 WL 31420758, at *38 (Ohio Ct. App. Oct. 25, 2002). A finding of guilt as to the counts of gross sexual imposition is not a prerequisite for a finding of guilt as to aggravated burglary. The pertinent criminal statute, O.R.C. 2911.11(A)(1), merely requires that the jury find that the offender had inflicted or attempted or

Case No. 3:04-CV-7224
Gwin, J.

threatened to inflict physical harm on another. There is no specific requirement of conviction for sexual contact constituting gross sexual imposition or for conviction of any other crime.

In the instant case, although the jury found that there was insufficient evidence to convict Petitioner of gross sexual imposition, the jury concluded that there was sufficient evidence that Petitioner had inflicted, attempted or threatened to inflict physical harm upon the victim. Consequently, conviction of the underlying crime of gross sexual imposition was unnecessary to prove aggravated burglary. *See Ohio Jury Instructions,* 4 O.J.I. 511.11 (2004) (noting that aggravated burglary required "only a purpose to commit a criminal offense . . . and not the actual commission").

In his objections, Petitioner contends that the particular language of the indictment and jury instructions in the instant case did not allow the jury to reach a guilty verdict as to aggravated burglary without first rendering a finding of gross sexual imposition. [Doc. 27.] However, a review of jury instructions from the second trial shows that no finding of gross sexual imposition was necessary to convict Wilson of aggravated burglary. The instruction mirrors those promulgated in *Ohio Jury Instructions,* 4 O.J.I. 511.11 by stating that "[o]nly a purpose to commit a criminal offense is necessary and not the actual commission thereof." [Doc. 16.] Moreover, the instructions never suggest that sexual contact is necessary to satisfy the physical harm element of aggravated burglary. [Doc. 16.]

Furthermore, even if the verdicts could be construed as inconsistent, Petitioner would still have no ground for relief. The governing rule of law is that "consistency of a verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment." *Dunn,* 284 U.S. at 393; *accord Harris,* 454 U.S. at 346. Even where a defendant is acquitted on a predicate offense and

-14-

Case No. 3:04-CV-7224
Gwin, J.

convicted on the compound offense, "inconsistent verdicts . . . should not necessarily be interpreted as a windfall for the Government at the defendant's expense." *Powell,* 469 U.S. at 65. As the *Powell* court correctly advises, "it is equally possible that the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.*

As explained previously, a federal habeas court can only grant a writ if a state court decision is "contrary to" or an "unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d). In reviewing the state courts' decisions, this Court finds that the reasoning applied therein, in determining that the verdicts were not inconsistent and in further expressing that consistent verdicts are not necessary, does not run contrary to nor involve the unreasonable application of clearly established law. Therefore, Petitioner's claim of inconsistent verdicts is without merit.

### IV. Conclusion

For the reasons described above, the Court finds that Petitioner has not presented a cognizable claim for relief under 28 U.S.C. § 2254. Accordingly, the Court **ADOPTS** Magistrate Judge Gallas' Report and Recommendation and **DENIES** Petitioner's Petition for Writ of Habeas Corpus. The Court additionally certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith. See 28 U.S.C. § 2253(c).

IT IS SO ORDERED.

Dated: June 11, 2007        s/      *James S. Gwin*
                            JAMES S. GWIN
                            UNITED STATES DISTRICT JUDGE